TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel:    718) 762-1324
Fax:    (718) 762-1342
*Attorney for the Plaintiffs, the FLSA Collective, and*
*Potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
 **EASTERN DISTRICT OF NEW YORK**

---

ROBERT TAM and
LEI GUO a/k/a RAYMOND GUO,
o*n behalf of themselves and others similarly situated,*
*and*
ROBERT TAM and
LEI GUO a/k/a RAYMOND GUO,
*individually*

                                        *Plaintiffs,*
v.
STAR NISSAN, INC.
          d/b/a STAR NISSAN,
METRO CHRYSLER PLYMOUTH, INC.
          d/b/a STAR CARS AUTO MALL,
          d/b/a STAR CHRYSLER,
          d/b/a STAR JEEP, and
          d/b/a STAR FIAT
STAR AUTO SALES OF QUEENS VILLAGE LLC
          d/b/a STAR CARS AUTO MALL,
          d/b/a STAR CHRYSLER,
          d/b/a STAR JEEP, and
          d/b/a STAR FIAT
STAR HYUNDAI, LLC
          d/b/a STAR HYUNDAI
STAR AUTO SALES OF BAYSIDE, INC.
          d/b/a STAR TOYOTA-SCION IN BAYSIDE ,
STAR AUTO SALES OF QUEENS COUNTY LLC
          d/b/a STAR FIAT, and
JOHN DOE CORPORATION
          d/b/a STAR SUBARU
JOHN KOUFAKIS, SR., JOHN KOUFAKIS, JR.,
STEVEN KOUFAKIS, MICHAEL KOUFAKIS,
GUS TSOLKAS, OSIRIS CEDENO, and PAUL CHONG
                                        *Defendants.*

---

**Case No:** 1:15-cv-4363

**29 U.S.C. § 216(b)**
**COLLECTIVE**
**ACTION & F.R.C.P.**
**23  CLASS ACTION**

**COMPLAINT**
**AND DEMAND FOR**
**JURY TRIAL**

Plaintiffs ROBERT TAM and LEI GUO a/k/a RAYMOND GUO (hereafter referred to as "Plaintiffs"), on behalf of themselves and similarly situated and individually, by and through their attorney, Troy Law, PLLC, hereby bring this complaint against STAR NISSAN, INC. d/b/a STAR NISSAN, STAR AUTO SALES OF QUEENS VILLAGE LLC d/b/a STAR CARS AUTO MALL, STAR CHRYSLER, STAR JEEP, and STAR FIAT, STAR HYUNDAI, LLC d/b/a STAR HYUNDAI, STAR AUTO SALES OF BAYSIDE, INC. d/b/a STAR TOYOTA-SCION IN BAYSIDE , STAR AUTO SALES OF QUEENS COUNTY LLC d/b/a STAR FIAT, METRO CHRYSLER PLYMOUTH, INC. d/b/a STAR CHRYSLER JEEP DODGE, JOHN DOE CORPORATION d/b/a STAR SUBARU,  JOHN KOUFAKIS, SR., JOHN KOUFAKIS, JR., STEVEN KOUFAKIS, MICHAEL KOUFAKIS, GUS TSOLKAS, OSIRIS CEDENO and PAUL CHONG (hereafter referred to as "Defendants") and allege as follows:

## <u>INTRODUCTION</u>

1. This action is brought by Plaintiffs, on their behalves, as well as other employees similarly situated, against Defendants for alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices (<u>See</u> Exhibit 1 and 2 for Consent to Become Party Plaintiffs by Tam and Guo).

2. Upon information and belief, Defendants committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay its employees, including Plaintiffs, minimum wage and overtime compensation for all hours worked over forty (40) each workweek.

3. Upon information and belief, Defendants have in their possession record of  hours  that Plaintiffs  and  similarly situated employed by Corporate Defendants work or worked,

including work done in excess of forty hours each week.

4. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) liquidated damages, (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

5. Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants:   (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) unpaid spread-of-hours pay (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act; (7) 9% simple prejudgment interest provided by NYLL; (8) post-judgment interest; and (9) attorney's fees and costs.

6. Plaintiffs also bring this action under the Civil Rights Act of 1866, 42 U.S.C. §1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended by the Civil Rights Act of 1991, ("Title VII") and the New York Human Rights Law, "NYHRL"), 15

N.Y. Exec. Law §296 *et seq.* for damages arising from discrimination based on race and discriminatory terms and conditions of employment imposed by above-captioned Defendants.

7. On June 10, 2015, Plaintiffs each filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination (See Exhibit 6 and 7).

8. Plaintiffs are awaiting the EEOC to issue a dismissal and a Notice of Right to Sue.

## JURISDICTION AND VENUE

9. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a), as such claims are so related in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10. The jurisdiction of this Court is invoked pursuant to 18 U.S.C. §1965, 28 USC §§1331, 1343, and 2202 to secure protection of and to redress deprivation of rights secured by the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981, and this Court's power to assert ancillary and pendant jurisdiction of state law claims based on NYHRL and pursuant to the common law of New York State and city law based on the NYCHRL.

11. This Court has personal jurisdiction over Defendant John Koufakis, Sr., John Koufakis, Jr., Steven Koufakis, Michael Koufakis, Gus Tsolkas, Osiris Cedeno, And Paul Chong in that all Defendants are citizens and residents of the State of New York.

12. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

13. Plaintiff Robert Tam ("Tam") was employed by Defendant Star Nissan, Inc. d/b/a/ Star Nissan, a car dealership with a principal address at 206-02 Northern Boulevard, Bayside, NY 11361 as a car salesman.

14. Plaintiff Lei Guo a/k/a Raymond Guo ("Guo") was employed by Defendant Star Nissan, Inc. d/b/a/ Star Nissan,a car dealership a principal address at 206-02 Northern Boulevard, Bayside, NY 11361 as a translator and car salesman.

## DEFENDANTS
### Corporate Defendants

15. Upon information and belief, Defendant Star Nissan, Inc. d/b/a Star Nissan ("Star Nissan") is a domestic corporation, organized and existing under the laws of State of New York on December 10, 1990, with a principal address at 206-02 Northern Boulevard, Bayside, NY 11361.

16. Upon information and belief, Star Nissan has a Service Center located at 171-20 Station Road, Flushing, NY 11358.

17. Upon information and belief, Defendant Star Auto Sales of Bayside, Inc. d/b/a Star Toyota-Scion ("Star Toyota-Scion") in Bayside is a domestic corporation, organized and existing under the laws of State of New York on June 27, 1995, with a principal address at 205-11 Northern Boulevard, Bayside, NY 11361.

18. Upon information and belief, Star Toyota-Scion shares a Service Center with Star Nissan at 171-20 Station Road, Flushing, NY 11358.

19. Upon information and belief, Star Toyota-Scion also owns a used car center at 190-01 Northern Boulevard, Flushing, NY 11358.

20. Upon information and belief, Defendant Metro Chrysler Plymouth, Inc. d/b/a Star Cars Auto

Mall, d/b/a Star Chrysler, d/b/a Star Jeep d/b/a Star Fiat ("Star Auto Mall"), is a domestic corporation, organized and existing under the laws of State of New York on October 10, 1990, with a principal address at 211-10 Jamaica Avenue, Queens Village, NY 11428.

21. Upon information and belief, Defendant Star Auto Sales of Queens Village LLC d/b/a Star Cars Auto Mall, d/b/a Star Chrysler, d/b/a Star Jeep d/b/a Star Fiat ("Star Auto Mall") is a domestic corporation, organized and existing under the laws of State of New York on August 7, 2002, with a principal address at 210-11 Jamaica Avenue, Queens Village, NY 11428.

22. Upon information and belief, Steven Koufakis is the dealer principal of Star Auto Mall, having "been a part of the Star Motor Group since his dad, John Sr. started a Used Car dealership where the current Chrysler showroom resides today" (See Exhibit 8).

23. Upon information and belief, Defendant Star Hyundai LLC d/b/a Star Hyundai ("Star Hyundai") is a domestic corporation, organized and existing under the laws of State of New York on December 3, 2008, with a principal address at 201-16 Northern Boulevard, Bayside, NY 11361.

24. Upon information and belief, Defendant Star Auto Sales of Queens County, LLC. d/b/a Star Fiat ("Star Fiat") is a domestic corporation, organized and existing under the laws of State of New York on August 4, 2011, with a principal address at 211-44 Jamaica Avenue, Queens Village, NY 11428.

25. Upon information and belief, Defendant John Doe Corporation, Inc. d/b/a Star Subaru ("Star Subaru"), is a domestic corporation, organized and existing under the laws of State of New York, with a principal address at 206-26 Northern Boulevard, Bayside, NY 11361.

26. Star Toyota-Scion, Star Nissan, Star Chrysler Jeep Fiat, Star Hyundai, Star Fiat and Star Subaru are all members of a car dealership chain known as Star Auto Group.

27. Upon information and belief, Star Auto Group, "one of the largest groups in the North East," is "Family owned and operated just like in the 70's" when John Koufakis Sr. "started Star Auto Group as a stand alone used car dealership" (See Exhibit 9).

28. At all times relevant herein, Star Auto Group, was, and continues to be, a single and joint employer and has had a high degree of interrelated and unified operation, and share common management, centralized control of labor relations, common ownership, common control, common business purposes and interrelated business goals.

29. Star Auto Group is an enterprise engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

30. Star Auto Group is one of the most successful privately owned car dealerships in the metropolitan area with a body shop and several used car dealerships. In addition to selling vehicles, Star Auto Group also sells replacement parts and provides repair service and maintenance.

31. Upon information and belief, Star Auto Group employs more than forty (40) car salespersons.

**Owner/ Operator Defendants**

32. Upon information and belief, John Koufakis, Sr., is the Founder, Owner and/or Manager and has, at all relevant times, exercised control of Star Auto Group and its day-to-day operations, including power to hire and fire Plaintiffs, set wages, set terms and conditions of employment, as well as the authority to maintain employment records for Plaintiffs.

33. Upon information and belief, many of the most senior Star Auto Group workers have been hired and employed by John Koufakis, Sr., who visits each of the car dealerships every day.

34. Upon information and belief, John Koufakis, Jr., is an Owner and/or a Manager and has, at all relevant times, exercised control of Star Auto Group and its day-to-day operations, including

power to hire and fire Plaintiffs, set wages, set terms and conditions of employment, as well as the authority to maintain employment records for Plaintiffs.

35. Specifically, upon information and belief John Koufakis, Jr. is the owner of Star Nissan, Inc., and all managers at Star Nissan, Inc., including but not limited to Gus Tsolkas, Paul Chong and Osiris Cedeno, directly report to John Koufakis, Jr.

36. Upon information and belief, Steven Koufakis, is an Owner and/or a Manager and has, at all relevant times, exercised control of Star Auto Group and its day-to-day operations, including power to hire and fire Plaintiffs, set wages, set terms and conditions of employment, as well as the authority to maintain employment records for Plaintiffs.

37. Upon information and belief, Michael Koufakis, is an Owner and/or a Manager and has, at all relevant times, exercised control of Star Auto Group and its day-to-day operations, including power to hire and fire Plaintiffs, set wages, set terms and conditions of employment, as well as the authority to maintain employment records for Plaintiffs.

38. Upon information and belief, John Koufakis, Jr., Steven Koufakis, and Michael Koufakis are the three sons of John Koufakis, Sr. who have been working with their father since adulthood.

39. Upon information and belief, John Koufakis, Jr., Steven Koufakis, and Michael Koufakis were responsible for setting the employment and compensation policies affecting Star Auto Group sales representatives.

40. Upon information and belief, Gus Tsolkas is a Manager of Star Nissan and has, at all relevant times, exercised control of Star Auto Group and its day-to-day operations, including power to hire and fire Plaintiffs, set wages, set terms and conditions of employment, as well as the authority to maintain employment records for Plaintiffs.

41. Upon information and belief, Osiris Cedeno is a Manager of Star Nissan and has, at all relevant

times, exercised control of Star Auto Group and its day-to-day operations, including power to hire and fire Plaintiffs, set wages, set terms and conditions of employment, as well as the authority to maintain employment records for Plaintiffs.

42. Upon information and belief, Paul Chong is a Manager of Star Nissan and has, at all relevant times, exercised control of Star Auto Group and its day-to-day operations, including power to hire and fire Plaintiffs, set wages, set terms and conditions of employment, as well as the authority to maintain employment records for Plaintiffs.

43. Additional Individual Defendants are the officers, directors, managers and/or majority shareholders or owners of Corporate Defendants, who, as ten largest shareholders are individually responsible for unpaid wages under the New York Business Corporation Law (See **Exhibit** 3).

44. Additionally, Plaintiffs intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York the right to examine the minute proceedings of shareholders and records of shareholders of the above corporations (See **Exhibit** 4).

45. Plaintiff has fulfilled all conditions precedent to the institution of this action and/ or condition have been waived.

## STATEMENT OF FACTS

46. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiff, and the Class.

47. Defendants knew that the nonpayment of minimum wage, overtime pay, expenses of the license training would financially injure Plaintiff and similarly situated employees, and violate state and federal laws.

48. Defendants did not post the required United States Department of Labor and New York State Department of Labor posters regarding pay rates, overtime pay, tip credits, and pay

days.

49. Upon information and belief, Defendants failed to keep full and accurate records of Plaintiff's hours and wages in order to avoid liability for their wage violations.

**Defendants' Wage-and-Hour Practices**

50. Upon information and belief, Star Auto Group salespersons are paid pursuant to a commission agreement plus a shift pay of roughly $100 per week. Star Auto Group would pay that sales representative the roughly $100 per week shift pay plus roughly $100 per car sold, regardless of how many hours he or she worked.

51. When Plaintiffs did not sell any cars during a pay period, they were only paid $100 per week shift amount.

52. Thus, for each pay period that plaintiffs did not sell any cars, they received substantially less than the minimum wage.

53. Even when Plaintiffs sold one or two cars, the commissions received were not enough to constitute minimum wage when added to shift pay.

54. Plaintiffs were never informed by Defendants of their entitlement to minimum wage for all hours worked under the FLSA or NYLL.

55. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

56. While employed by Defendants, Plaintiffs were not exempt under state laws requiring employers to pay employees overtime.

57. Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

58. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and

telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

59. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day, or verbally notify Plaintiffs about the information contained in the poster.

**Wage and Hour Claims**

*Plaintiff Robert Tam*

60. On July 25, 2014, Robert Tam ("Tam") applied for the sales representative position at Star Toyota.

61. On the same day, Star Toyota Manager referred Tam to Star Nissan across the street. Both Star Toyota and Star Nissan are both part of Star Auto Group.

62. After two weeks of training about the brand, function, history, style, and trend of Nissan cars, Tam passed a test and was certified as a Car Consultant.

63. However, Manager Paul Chung assigned Robert Tam *only* Chinese-speaking customers, especially customers who spoke Mandarin.

64. This meant that Robert Tam, who spoke English, Mandarin, Cantonese, and Taisanese, was delegated to a small segment of Star Nissan customers, which severely limited the amount of his consumer interactions.

65. Tam' s work schedule is generally as follows:

    a.  On Monday, Tam worked from 13:00 to 21:00, for eight (8) hours;

    b.  On Tuesday, Tam worked from 09:00 to 18:00, for eight (8) hours;

    c.  On Wednesday, Tam worked from 09:00 to 21:00, for twelve (12) hours;

    d.  On Saturday, Tam worked from 09:00 to 18:00, for nine (9) hours; and

e.   On Sunday, Tam worked from 12:00 to 17:00, for five (5) hours.

66. Tam worked on average forty three (43) hours each week.

67. Tam was paid one hundred dollars ($100) in shift wages each week, plus one hundred

dollars ($100) for each car that he sold.

68. Tam was not compensated at least the hourly minimum wage for each hour worked under

the FLSA and the NYLL.

69. Furthermore, in December 2014, General Manager Gus Toslkas began withholding between

three hundred dollars ($300) to four hundred dollars ($400) from Tam's paycheck for his

commission from making three to four car sales.

70. Upon information and belief, this illegal withholding is split between non-Chinese Star

Nissan employees.

71. Tam was also not compensated for at least the minimum hourly wage for all hours worked

above forty (40) in each workweek under the NYLL.

***Plaintiff Lei Guo a/k/a Raymond Guo***

72. From on or about August 20, 2014 to January 2015, Lei Guo a/k/a Raymond Guo ("Guo")

worked at Star Nissan.

73. For the first one and a half month, Guo worked as a translator for eleven (11) hours an hour,

forty seven and a half (47.5) hours each week.

74. Guo's work schedule is generally as follows:

a.   On Monday, Wednesday, Thursday, Friday, Saturday, Guo shifts run from 11:00

to 19:00. In reality, Guo often works past 19:00 to 20:00 and even 21:00. So Guo

usually works between nine (9) and ten (10) hours each day.

b.   On Sunday, Guo worked from 11:00 to 16:00, for five (5) hours each week.

75. Guo was paid one hundred dollars ($100) in shift wages each week, plus one hundred

dollars ($100) for each car that he sells.

76. Guo was not compensated at least the hourly minimum wage for each hour worked under the FLSA and the NYLL.

77. Guo was not compensated for at least the minimum hourly wage for all hours worked above forty (40) in each workweek under the NYLL.

**Racial Discrimination Claims**

78. Star Nissan Chinese Sales Consultants are only allowed to make sales to Chinese customers, whereas non-Chinese Star Nissan Sales Consultants are allowed to make sales to Chinese customers as well.

79. Only Star Nissan Chinese Sales Consultants are not given the WiFi password at the workplace.

80. Star Nissan Chinese Sales Consultants are also subject to racial diatribe and disparaging comments by other Sales Consultants.

81. Examples of such racial diatribes directed at Chinese certified car consultants Tam and Guo include the Spanish "maricón" and "puta," which in English are "fagot" and "bitch."

82. When Star Nissan Chinese Sales Consultants complain to Management, their complaints are ignored. In fact, on multiple occasions, Management indicated that they are for the racially disparate treatment, including favoritism of employees, and allowing Sales Consultants to verbally abuse and physically threaten Star Nissan's Chinese Sales Consultants.

83. About once every day, General Manager Gus Tsolkas can be overheard saying "Fuck Chinese" by Star Nissan employees, including, but not limited to, Tam, Guo, Hispanic Sales Consultant Joe Kolb, Middle Eastern Sales Consultant Barry Ranjabar, and Sales Consultant Anthony Signorelli at Star Nissan.

84. General Manager Gus Tsolkas can be similarly overheard saying "Stupid Chinese," in the

presence of Star Nissan employees.

85. Sales Consultant Luis can be overhead saying "Chinese people is a waste of time—they are so cheap" around once every week, when potential Chinese customers look at cars but do not buy.

86. Other sales consultants frequently require Chinese certified car consultants to share their commission with them, even though the commission belongs to the car consultant who receives the deposit from the client.

***Plaintiff Robert Tam***

87. Tam's National Origin is Hong Kong.

88. Tam has lived in the United States since 1973 and is fluent in English.

89. On the first day of his employment, Star Nissan Malaysian manager Paul Chong explained to Tam that he can handle *only* Chinese customers.

90. On the other hand, Star Nissan sales representatives, regardless of their race, can be assigned Chinese customers.

91. This limited Tam's ability to make at least the hourly minimum wage with additional income from his one hundred dollar ($100) per car commission.

92. For the first few weeks at work Tam brought his laptop to Star Nissan every work day.

93. Tam observed that all other Star Nissan employees who brought their laptop were given WiFi access, and asked the Office girl Christine for the WiFi password.

94. Christine told Tam that she "will set up the password for you."

95. However, it soon became clear to Tam that Christine, by direction of Star Nissan Management, was not going to give Tam the WiFi password.

96. As a result, Tam stopped bringing his laptop.

97. Everyone at Star Nissan gets WiFi Access but Tam and Guo.

98. Tam's sales, unlike others' sales, also needed to be approved by the manager.

99. In November 2014, Office girls Christine and Dianna accused Tam of doing "something wrong" based on Customer Satisfaction After-Sale Survey. They said that Tam did not have any knowledge about car selling nor experience about the vehicle.

100.    On the same occasion, sales manager Gus Tsolkas told Tam: "you are stupid Chinese and I can fire you at any time if you do anything wrong."

101.    Upon information and belief, the accusation of customer dissatisfaction is counter-factual and rooted upon racial bias. Not only did Tam pass an exam, testing his proficiency with Nissan car brand, function, history, style, and trend, but when Tam called his recent customers, all three reassured Tam that they were satisfied with his performance and good sale.

102.    On December 17, 2014, customer Yuan Xing ("Xing") gave Star Nissan a deposit for his Rogue Select 2014. Xing handed Tam personal checks, which Manager Tsolkas said was unacceptable. Xing said he would return at 7:00pm with money order, which was accepted at Star Nissan.

103.    During this time, Gus sold the vehicle to another non-Asian customer even though Xing had paid the deposit, completed all required documentation, and had the license plate already set up.

104.    Xing was not informed that the car was sold to somebody else. Instead, he was told by Tsolkas to "wait for the newer model 2015 to be released."

105.    Before Certified Car Consultants make sales, they have to confirm the sales price with the Sales Manager for his or her approval.

106.    On February 4, 2015 in the afternoon, Manager Tsolkas asked Tam to stand on the

podium. He asked him what the price of the 2015 Murano AWD. Tam responded forty-four

thousand ($44,000), the full price.

107.      A week or two prior to that date, Tam has sold a Murano AWD at forty-four

thousand dollars ($44,000) after approval by Star Nissan Sales Manager Paul Chong.

108.      Manager Tsolkas said that the car should be sold at forty-five thousand ($45,000),

and "you are fired stupid Chinese," using the "F" word and profane language against Tam,

culminating in his demand for Tam to "get out of here."

109.      Tam did not receive and has not received that week's paycheck.

*Plaintiff Lei Guo a/k/a Raymond Guo*

110.      Guo is an ethnically Chinese.

111.      Guo was hired at Star Nissan as an interpreter of Mandarin Chinese. He is fluent in

both English and Mandarin.

112.      Guo was subject to employment discrimination for his race as a Chinese employee.

113.      For instance, though Star Nissan assigned Chinese customers to all sales

representatives, Guo was only allowed to assist Chinese customers for his race.

114.      Upon Guo's own estimation, commission was cut by three quarters (3/4).

115.      When Guo talked to Star Nissan Manager Osiris Cedeno about the racially disparate

treatment of sales representatives, Manager Cedeno underscored that he was for the

treatment.

116.      The six sales representatives, including the Manager, were free to ridicule the

Chinese sales representatives, like Robert Tam and Lei Guo, whereas physical threats were

carried out if the Chinese sales representatives dared to stand up to the racial epithets and

diatribe.

117.      When Guo responded to the verbal abuse during his first few days at Star Nissan,

Star Nissan car salesmen threatened him verbally and told him: ""What! I'm going to fuck you up, you Chink."

118.     Subsequently, Guo never responded to other car salesmen's racist "jokes," which are directed only at Chinese employees, including Guo and Tam, and condoned by the Management, including Sales Manager Osiris.

119.     Moreover, Guo was often directed by Star Nissan Managers to "sit down," including outside in the snow, for no purpose but to humiliate him.

120.     Star Nissan Managers did not give Guo clear instructions at work, but required Guo to "sit down" because often, potential Chinese customers cannot be seen at Star Nissan at four days on a stretch.

121.     The Manager's policy further limited Guo's ability to make at least the hourly minimum wage with additional income from his one hundred dollar ($100) per car commission.

122.     In January 2015, Guo was terminated by Sales Manager Osiris Cedeno for not selling enough cars and drinking water.

### Disability Discrimination Claims
#### *Plaintiff Lei Guo a/k/a Raymond Guo*

123.     Lei Guo a/k/a Raymond Guo is a diagnosed patient of diabetes insipidus, an uncommon disorder characterized by the insufficient production of the antidiuretic hormone, vasopressin, which prevents polyuria, excessive urination, and polydipsia, excessive thirst from dehydration.

124.     Plaintiff Guo regularly takes Desmopressin Acetate Tablets (DDAVP), an artificial vasopressin, to control increased thirst and urination from diabetes insipidus.

125.      For patients of diabetes insipidus, it is important to prevent dehydration to prevent

water loss from the body.

126.	However, when Guo drinks water, he is reprimanded and asked to "sit down" by the

Sales Manager Osiris Cedeno.

127.	Guo has explained on multiple occasions that as a diagnosed patient of diabetes

insipidus, he needs to drink water to keep himself hydrated.

128.	Guo's request to drink water at regular intervals amounts to a request for reasonable

accommodation that would not impose an undue hardship on Defendants.

129.	In January 2015, Guo was terminated by Sales Manager Osiris Cedeno for not

selling enough cars and drinking water.

## COLLECTIVE ACTION ALLEGATIONS

130.	Plaintiffs bring this action individually and as class representative individually and on

behalf of all car salesmen of Star Auto Group who have been or were employed by the

Defendants for up to the last three (3), through entry of judgment in this case (the

"Collective Action Period") and whom were not compensated at least the hourly minimum

wage for all hours worked and/or overtime compensation for overtime hours worked (the

"Collective Action Members"). (See Exhibit 5 for the proposed Consent to Sue Form.)

## CLASS ACTION ALLEGATIONS

131.	Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C.

P.") Rule 23, on behalf of all car salesmen employed by Star Auto Group on or after the date

that is six years before the filing of the Complaint in this case as defined herein (the "Class

Period").

132.	All said persons, including Plaintiffs, are referred to herein as the "Class."

133.	The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

## Numerosity

134.   The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

## Commonality

135.   There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a.   Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

   b.   Whether Plaintiffs and Class members are entitled to overtime under the New York Labor Law;

   c.   Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

   d.   Whether Defendants maintained  policy, pattern and/or practice of failing to provide requisite statutory meal periods;

   e.   Whether Defendants provided a Time of Hire Notice detailing rates of pay and

payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

    f.   At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work;

### Typicality

136.   Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### Adequacy

137.   Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent representing plaintiffs in both class action and wage and hour employment litigation cases.

### Superiority

138.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

139.   Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIM

### COUNT I.
### [Violations of the Fair Labor Standards Act—Minimum Wage
### Brought on behalf of Plaintiffs and the FLSA Collective
### against all Defendants]

140.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully
set forth herein.

141.   At all relevant times, upon information and belief, Defendants have been, and continue to
be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for
"commerce," within the meaning of the FLSA, 29 U.S.C. §§206(a) and 207(a).

142.   At all relevant times, Defendants employed "employees" including Plaintiffs, within the
meaning of FLSA, U.S.C. §§206(a) and 207(a).

143.   Upon information and belief, at all relevant times, Defendants have had gross revenues in
excess of $500,000.

144.   The FLSA provides that any employer engaged in commerce shall pay employees the
applicable minimum wage. 29 U.S.C. § 206(a).

145.   At all relevant times, Defendants had a policy and practice of refusing to pay the statutory
minimum wage to Plaintiffs, and the collective action members, for some or all of the hours
they worked.

146.   Upon information and belief, even for car salesmen at Star Nissan and other car salesmen
in the Star Auto Group outside of Star Nissan who are not subject to discriminatory practices
like Plaintiffs, there are weeks in which car salesmen fail to make a single sale.

147.   The car salesmen are entitled to receive minimum wage during such down weeks.

148.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall
be liable to the employees affected in the amount of their unpaid minimum compensation, and

in an additional equal amount as liquidated damages.

149.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced
by failing to compensate Plaintiff and Collective Class Members at the statutory minimum
wage when they knew or should have known such was due and that failing to do so would
financially injure Plaintiff and Collective Action members.

**COUNT II.**
**[Violation of New York Labor Law—Minimum Wage**
**Brought on behalf of Plaintiff and Rule 23 Class]**

150.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully
set forth herein.

151.   At all relevant times, Plaintiffs were employed by Defendants within the meaning of New
York Labor Law §§2 and 651.

152.   At all relevant times, Defendants had a policy and practice of refusing to pay the statutory
minimum wage to Plaintiffs, and the collective action members, for some or all of the hours
they worked.

153.   Upon information and belief, even for car salesmen at Star Nissan and other car salesmen
in the Star Auto Group outside of Star Nissan who are not subject to discriminatory practices
like Plaintiffs, there are weeks in which car salesmen fail to make a single sale.

154.   New York Labor Law requires employer to pay "minimum and overtime wage… for each
week or work, regardless of the frequency of payment, whether the wage is on a commission,
bonus, etc." 12 NYCRR §2.9.

155.   In 2010, the New York Department of Labor clarified that, "commissions earned by an
employee during subsequent weeks within a settlement/pay period may not be used to satisfy
the employer's minimum wage and overtime payments to the employee."  Maria L. Colavito,

Request for Opinion Automotive Salespersons, RO-09-0177, Feb. 25, 2010.

156.   The car salesmen are entitled to receive minimum wage during such down weeks.

157.   Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class

Members' rights by failing to pay him minimum wages in the lawful amount for hours

worked.

158.   An employer who fails to pay the minimum wage shall be liable, in addition to the

amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of

the shortfall under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent (100%)

after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Overtime Wage Brought on behalf of the Plaintiff and the FLSA Collective]

159.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

160.   The FLSA provides that no employer engaged in commerce shall employ a covered

employee for a work week longer than forty (40) hours unless such employee receives

compensation for employment in excess of forty (40) hours at a rate not less than one and

one-half times the regular rate at which he or she is employed, or one and one-half times the

minimum wage, whichever is greater. 29 USC §207(a).

161.   To qualify for Section 7(i)'s exemption from overtime provisions of the FLSA, three

conditions must be met:

   a.   The employee must be employed by a retail or service establishment;

   b.   The employee's regular rate of pay must exceed one and one-half times the

        applicable minimum wage; and

     c.   More than half the employee's total earnings in a representative period must

       consist of commissions on goods or services.

162.   Upon information and belief, even for car salesmen at Star Nissan and other car salesmen

in the Star Auto Group outside of Star Nissan who are not subject to discriminatory practices

like Plaintiffs, there are weeks in which car salesmen fail to make a single sale.

163.   The car salesmen are entitled to receive overtime compensation during such down weeks.

164.   Plaintiffs' regular rate of pay does not meet the minimum threshold of Section 7(i)'s

exemption, as they not only fall below one and one-half times the applicable minimum

wage, but the minimum wage itself.

165.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207

shall be liable to the employees affected in the amount of their unpaid overtime

compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

166.   Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated

the FLSA.

167.   At all relevant times, Defendants had, and continue to have, a policy of practice of

refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs

and Collective Action Members for all hours worked in excess of forty (40) hours per

workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*,

including 29 U.S.C. §§207(a)(1) and 215(a).

168.   The FLSA and supporting regulations required employers to notify employees of

employment law requires employers to notify employment law requirements. 29 C.F.R.

§516.4.

169.   Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements

of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

170.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV.
### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiffs and the Rule 23 Class
### against all Defendants]

171.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

172.   The NYLL requires that "an employer shall pay an employee for overtime at a wage rate of one and one-half times" the minimum wage for all hours worked in excess of 40 hours per week.

173.   An employer who fails to pay the overtime wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

174.   Upon information and belief, even for car salesmen at Star Nissan and other car salesmen in the Star Auto Group outside of Star Nissan who are not subject to discriminatory practices like Plaintiffs, there are weeks in which car salesmen fail to make a single sale.

175.   The car salesmen are entitled to receive overtime compensation during such down weeks.

176.   Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

177.   Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.
**[Violation of New York Labor Law—Spread of Time Pay**
**Brought on behalf of Plaintiffs and the Rule 23 Class**
**against all Defendants]**

178.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

179.   The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations §146-1.6.

180.   Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
**[Violation of New York Labor Law—Record-Keeping Requirements**
**Brought on behalf of Plaintiffs and the Rule 23 Class**
**against all Defendants]**

181.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

182.   Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYRR § 146-2.1.

183.   In fact, Defendants required Plaintiffs and similarly situated employee to sign paper stating false hours worked.

184.   As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

185.   Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

186.   Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs was not in good faith.

## COUNT VII.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on behalf of Plaintiffs and the Rule 23 Class against all Defendants]

187.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

188.   The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

189.   Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

190.   Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to each Plaintiff even after the fact.

191.   Due to Defendants' violations of New York Labor Law, each Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VIII.
**[Violation of New York Labor Law—New York Pay Stub Requirement
Brought on behalf of Plaintiffs and the Rule 23 Class
against all Defendants]**

192.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

193.   The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

194.   Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff's payday.

195.   Due to Defendants' violations of New York Labor Law, each Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT IX.
**[Race Discrimination in Violation of the Civil Rights Act of 1866, 42 USC §1981
Brought on behalf of Plaintiffs
against Star Nissan, Inc., Gus Tsolkas, Osiris Cedeno and Paul Chong and the John
Koufakis, Jr]**

196.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

197.   The aforesaid discriminatory acts and omissions of Defendants and their agents interfered with Plaintiffs and their right to enforce contracts.

198.   That the purpose of Defendants and their agents in so acting was to prevent Plaintiffs through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution

and laws of the United States and State of New York.

199.   Pursuant to their conduct, Defendants and their agents acted to deprive the Plaintiffs of their civil rights, by repeated acts of bad faith in violation of 42 U.S.C. §1981.

200.   As a result, Plaintiffs suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

## COUNT X.
**[Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et. Seq***
**Brought on behalf of Plaintiffs**
**against Star Nissan, Inc., Gus Tsolkas, Osiris Cedeno and Paul Chong and the John Koufakis, Jr]**

201.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

202.   Plaintiffs allege that Defendants and their agents discriminated against Plaintiffs with respect to the terms and conditions of employment because of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., as amended by the Civil Rights Act of 1991.

203.   Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiffs under the law.

204.   By virtue of Defendants' conducted alleged herein, Plaintiffs have been financially and psychologically injured.

## COUNT XI.
**[Wrongful Termination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et. Seq***
**Brought on behalf of Plaintiff Robert Tam**
**against Star Nissan, Inc., Gus Tsolkas, Osiris Cedeno and Paul Chong and the John Koufakis, Jr.]**

205.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

206.   Plaintiffs allege that Defendants and their agents discriminated against Plaintiffs with respect to the terms and conditions of employment because of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., as amended by the Civil Rights Act of 1991.

207.   Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiffs under the law.

208.   By virtue of Defendants' conducted alleged herein, Plaintiffs have been financially and psychologically injured.


## COUNT XII.
### [Hostile Work Environment in Violation of the Civil Rights Act of 1866, 42 USC §1981
### Brought on behalf of Plaintiffs
### against Star Nissan, Inc., Gus Tsolkas, Osiris Cedeno and Paul Chong and the John Koufakis, Jr]

209.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

210.   Plaintiffs allege that Defendants and their agents engaged in various and severe and hostile actions against them acting individually as a result of their opposition to race discrimination.

211.   That the purpose of Defendants and their actions in so seeking was to prevent Plaintiffs through economic and psychological intimidation, from seeking equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and State of New York.

212.   Pursuant to their conduct, Defendants and their agents acted to deprive the Plaintiffs of their civil rights, by repeated and insidious acts of harassment, intimidation, bad faith, and threat, all in violation of 42 U.S.C. §1981.

213.   As a result of the aforesaid acts, depriving Plaintiffs of their civil rights, they suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

## COUNT XIII.
### [Race Discrimination in Violation of New York State Executive Law §296
### Brought on behalf of Plaintiffs
### against Star Nissan, Inc., Gus Tsolkas, Osiris Cedeno and Paul Chong]

214.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

215.   New York State Executive Law §296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

## COUNT XIV.
### [Violation of New York State Human Rights Law
### Aiding and Abetting
### Brought on behalf of Plaintiffs
### against Star Nissan, Inc., Gus Tsolkas, Osiris Cedeno and Paul Chong and the John Koufakis, Jr]

216.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

217.   Defendants Tsolkas, Cedeno and Chong were all managers and/or supervisors of the Plaintiffs during all relevant times mentioned herein.

218.   Tsolkas, Cedeno and Chong aided and abetted Corporate Defendants in its discriminatory,

hostile and retaliatory conduct against Plaintiffs when they questioned Defendants' racially discriminatory labor practices.

219.   The acts and/or omissions of Defendants were intentional, willful, reckless and discriminatory in nature, and directly motivated by Plaintiffs' race and/or in retaliation for Plaintiffs' complaints of discrimination.

220.   By virtue of Defendants' conduct as alleged herein, Plaintiffs have been injured.

### COUNT XV.
### [Intentional Infliction of Emotional Distress
### Brought on behalf of Plaintiffs
### against Star Nissan, Inc., Gus Tsolkas, Osiris Cedeno and Paul Chong and the John
### Koufakis, Jr]

221.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

222.   Defendants' act and/or omissions were intentional, willful, reckless and discriminatory in nature and directly motivated by Plaintiffs' race.

223.   Defendants' act and/or omissions were intimidating, pervasive, extreme, outrageous, and intended to cause severe emotional distress to Plaintiffs.

224.   Defendants' act and/or omissions were deliberately reprehensible and atrocious and in direct retaliation for Plaintiffs' complaint of race-based discrimination.

225.   By virtue of the foregoing, Plaintiffs have suffered severe emotional and physical distress.

### COUNT XVI.
### [Race Discrimination in Violation of New York City Human Rights Law §8-107
### Brought on behalf of Plaintiffs
### against Star Nissan, Inc., Gus Tsolkas, Osiris Cedeno and Paul Chong and the John
### Koufakis, Jr]

226.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

227.  New York City Human Rights Law §8-107 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

## COUNT XVII.
### [Violation of Americans with Disabilities Act of 1990, as amended 2008
### Brought on Behalf of Plaintiff Lei Guo a/k/a Raymond Guo
### against Star Nissan, Inc., Gus Tsolkas, Osiris Cedeno and Paul Chong and the John
### Koufakis, Jr]

228.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

229.  Americans with Disabilities Act Amendment Act of 2008 makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of his or her disability.

230.  Under Americans with Disabilities Act of 1990, "disability" means, with respect to an individual—

    a.  A physical or mental impairment that substantially limits one or more major life activities of such individual;

    b.  A record of such an impairment; or

    c.  Being regarded as having such an impairment. 42 U.S. C. 12102 §3 (1).

231.  "Major life activities" include "Major Bodily Functions," including "functions of the… bowel" and "endocrine… functions" 42 U.S.C. 12102 §(2)(B).

232.  Plaintiff Lei Guo a/k/a Raymond Guo, as a diagnosed patient of diabetes insipidus taking regular medications to control diabetes insipidus symptoms, is considered disabled under the Americans with Disabilities Act Amendment Act of 2008.

233.   Diabetes insipidus involves the defect in the production of the antidiuretic hormone, vasopressin, which is produced in the pituitary gland in the hypothalamus of the brain, and which signals to the kidney to limit urinary output.

234.   Defendants Star Nissan, Gus Tsolkas, Osiris Cedeno and Paul Chong and the John Koufakis, Jr. failed to make reasonable accommodation to Plaintiff Lei Guo a/k/a Raymond Guo, who is otherwise qualified, by allowing Plaintiff Guo to drink water at regular intervals to keep himself hydrated.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief, against all Defendants for wage-and-hour claims:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied minimum and/or premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual

Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)  A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)  An injunction against Corporate Defendants that do business as Star Auto Group, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)  An award of unpaid overtime wages and spread of hours pay due under New York Labor Law due Plaintiffs and the Class Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)  An award of unpaid minimum wages and/or overtime compensation due to Plaintiffs and Collective Action members under the FLSA plus liquidated damages.

h)  An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages, overtime compensation pursuant to 29 U.S.C. §216;

i)  up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)  up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)   An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)   An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

m)   An award of prejudgment and post-judgment fees;

n)   Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

o)   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Further, Plaintiffs respectfully request the Court to grant the following relief against Star Nissan, Inc., the owner John Koufakis, Jr., and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong for the discrimination claims:

1.   Declaring the acts and practices complained of herein in violation of the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296, and the New York City Human Rights Law §8-107 and/or the Americans with Disabilities Act of 1990, as amended;

2.   Enjoining defendants, their officers, employees, successors, franchises, agents and other persons in active concerts or participation with any of them, from engaging in any act or practices which, on the basis of race, denies or abridges any rights secured by the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State

Executive Law §296, and the New York City Human Rights Law §8-107 to prevent defendants from so doing in the future;

3.  Enjoining defendants, their officers, employees, successors, franchises, agents and other persons in active concerts or participation with any of them, from engaging in any act or practices which, on the basis of race, denies or abridges any rights secured by the Americans with Disabilities Act of 1990 to prevent defendants from so doing in the future;

4.  Directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

5.  Directing defendants to place plaintiffs in the position they would be in but for defendants' discriminatory treatment towards them, and to make whole for all earnings they would have received but for defendants' discriminatory treatment;

6.  An award of front pay for Defendants' unlawful termination of Plaintiff Robert Tam in violation of the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296, and the New York City Human Rights Law §8-107;

7.  An award of front pay for Defendants' unlawful termination of Plaintiff Lei Guo a/k/a Raymond Guo in violation of the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296, the New York City Human Rights Law §8-107 and the Americans with Disabilities Act of 1990, as amended;

8.  An award of punitive damages, in an amount, not less than $500,000 against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong

from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the Civil Rights Act of 1866;

9.  An award of punitive damages, in an amount, not less than $200,000 against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the Title VII of the Civil Rights Act of 1964;

10. An award of punitive damages, in an amount, not less than $500,000 against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the New York State Executive Law §296;

11. An award of punitive damages, in an amount, not less than $500,000 against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the New York City Human Rights Law §8-107 and;

12. An award of punitive damages, in an amount, not less than $500,000 against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the Age Discrimination in Employment of 1967;

13. An award of compensatory damages, in an amount not less than $500,000, for mental anguish, emotional distress, loss of employment opportunities, and other monetary damages against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong a for their racial discrimination at the workplace under the Civil Rights Act of 1866;

14. An award of compensatory damages, in an amount not less than $500,000, for mental anguish, emotional distress, loss of employment opportunities, and other monetary damages against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong for their racial discrimination at the workplace under the Title VII of the Civil Rights Act of 1964;

15. An award of compensatory damages, in an amount not less than $500,000, for mental anguish, emotional distress, loss of employment opportunities, and other monetary damages against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong for their racial discrimination at the workplace under the New York State Executive Law §296;

16. An award of compensatory damages, in an amount not less than $500,000, for mental anguish, emotional distress, loss of employment opportunities, and other monetary damages against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong for their racial discrimination at the workplace under the New York City Human Rights Law §8-107;

17. An award of compensatory damages, in an amount not less than $500,000, for mental anguish, emotional distress, loss of employment opportunities and other monetary damages against Star Nissan, Inc., the Koufakis family and Managers Gus Tsolkas, Osiris Cedeno and Paul Chong for their age discrimination at the workplace under the Age Discrimination in Employment of 1967.

18. An injunction against Managers Gus Tsolkas, Osiris Cedeno and Paul Chong for aiding and abetting Long Island Business Institute's discriminatory practices against Plaintiffs;

19. For prejudgment interest;

20. For post-judgment interest;

21. For reasonable attorney's fees, together with the costs and expenses incurred in this

     action; and

22. For such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs

demand a trial by jury on all questions of facts relating to Discrimination issues of the

Complaint.


Dated: Flushing, New York
July 25, 2015

                                          TROY LAW, PLLC
                                          *Attorney for the Plaintiffs, the FLSA*
                                          *Collective, and Potential Rule 23 Class*

                                          ___/s/ John Troy___
                                          John Troy (JT0481)
                                          41-25 Kissena Boulevard Suite 119
                                          Flushing, NY 11355
                                          Tel: (718) 762-1324
                                          Fax: (718) 762-1342
                                          Email: johntroy@troypllc.com